UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------X
BRYANT ISMAIL RODRIGUEZ,

                         Petitioner.

          - against -                    **MEMORANDUM AND ORDER**

                                         11 Civ. 6707 (NRB)
                                           09 CR 58 (NRB)
UNITED STATES OF AMERICA,

                         Respondent.
---------------------------------------X
**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**


## I.  Introduction

On January 26, 2010, petitioner Bryant Ismail Rodriguez ("petitioner" or "Rodriguez"), after a six-day jury trial, was convicted of mail fraud in violation of 18 U.S.C. §§ 1341 and 1342 and wire fraud in violation of 18 U.S.C. §§ 1343 and 1342. He was sentenced to 108 months' imprisonment, to be followed by three years of supervised release.  Presently before the Court is petitioner's motion, brought pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence.  Rodriquez asserts numerous claims of ineffective assistance of counsel based on counsel's allegedly deficient performance before, during, and after trial.  For the reasons set forth below, we find that a hearing is not necessary to resolve petitioner's motion, and the motion is denied.

## II. Background

Rodriquez's conviction stems from a Ponzi scheme he orchestrated and conducted from approximately early 2007 through December 2008.  Gov't's Mem. of Law in Opp'n to Pet'r's Pet. for Writ of Habeas Corpus 1 [hereinafter Gov't's Opp'n].  Rodriquez claimed to manage a consumer electronics distribution company, called Communications and Electronics, Inc. ("C&E"), which supplied major electronics retail chains, such as Circuit City, with merchandise at a substantial profit.  Id.  Rodriquez, however, had no business dealings with electronics retail chains, other than as an ordinary customer, and C&E was nothing but a shell company used by Rodriquez to steal money from unsuspecting victims.  Presentence Investigation Report ¶¶ 17-18 [hereinafter PSR]; see also Gov't's Opp'n 2.

To find investors for his fraudulent scheme, Rodriquez preyed on the low-income congregations of three churches in Manhattan and the Bronx, including the El Camino Church in Washington Heights, of which he was a member.  Gov't's Opp'n 1-2; Gov't Sent'g Mem. 1.  Rodriquez pitched C&E as a unique investment opportunity exclusive to church members and promised "interest" payments of at least 30 percent a month on "investments."  Gov't's Opp'n 1-2; PSR ¶ 10.  Rodriquez began by procuring investments from pastors and respected church members.  PSR ¶ 11.  By making interest payments to these original

investors, Rodriguez encouraged additional investment from them as well as from other unsuspecting members of the church and their families and friends. Id. Further, Rodriguez sought to deceive his investors into believing that C&E was legitimate by purchasing electronics from retail chains and distributing them to church members for free or at a substantial discount. Gov't's Opp'n 2. As C&E gained investors, Rodriguez found ways to delay interest payments, such as by providing bonuses and increased payouts to investors who switched from monthly to quarterly payments. PSR ¶ 15. By late 2007 or early 2008, Rodriguez completely stopped providing interest payments to investors. Id. By mid- to late-2008, Rodriguez stopped attending church and returning investors' telephone calls. Id. ¶ 16.

After church members began to complain, the U.S. Attorney's Office initiated an investigation into Rodriguez's activities, which led to his arrest on December 23, 2008. PSR ¶¶ 17, 19. All told, Rodriguez collected over $2 million from over 200 victims, drawn from a mostly low-income and immigrant population. Id. ¶ 20. Although, as noted above, the initial investors received some "interest" payments, many of these victims never had their initial contribution returned. Id. Moreover, the victims who provided Rodriguez with funds later in

the scheme lost their entire investment, often with devastating financial consequences. Id. ¶¶ 20-28.

On January 22, 2009, a grand jury returned a one-count indictment against Rodriguez, charging him with mail fraud in violation of 18 U.S.C. §§ 1341 and 1342.  On October 8, 2009, the Government sent Rodriguez's counsel, Paul J. McAllister, a letter pursuant to United States v. Pimentel, 932 F.2d 1029 (2d Cir. 1991), calculating a Guidelines range of 92 to 115 months' imprisonment.  Letter from AUSA Sarah Y. Lai to Paul J. McAllister 3 (Oct. 8, 2009), Ex. A, Gov't's Opp'n [hereinafter Pimentel Letter].  On November 5, 2009, the Government sent Mr. McAllister a letter indicating that, if Rodriguez did not enter a guilty plea by November 25, 2009, the Government would oppose a one-level reduction in offense level for timely acceptance of responsibility.  Letter from AUSA Sarah Y. Lai to Paul J. McAllister (Nov. 5, 2009), Ex. B, Gov't's Opp'n.  Further, the Government suggested that Rodriguez be brought in for a reverse proffer the week of November 9.  Id.  Although a reverse proffer took place, it did not lead to a guilty plea or other resolution of the charges.  Gov't's Opp'n 3.  Following the filing of a one-count superseding indictment on December 8, 2009, again charging Rodriguez with mail fraud in violation of 18 U.S.C. §§ 1341 and 1342, the grand jury returned a two-count superseding indictment on December 22, 2009, charging Rodriguez

with both mail fraud in violation of 18 U.S.C. §§ 1341 and 1342 and wire fraud in violation of 18 U.S.C. §§ 1343 and 1342.

Rodriguez's trial commenced on January 19, 2010. At trial, the government presented evidence including statements from Rodriguez's victims; fraudulent investment documents and e-emails authored by Rodriguez; a recorded investors' meeting in which Rodriguez misrepresented his background and the investment opportunity; and testimony by retail chain representatives that contradicted Rodriguez's claims. See Gov't's Opp'n 3-4. In response, the defense argued that Rodriguez had collected investments in good faith, that he had repaid "90 percent" of his investors, and that the former pastor of El Camino Church, Miguel Amadis, had stolen the money Rodriguez had collected from investors. Id. at 4-5. On January 26, 2010, the jury found Rodriguez guilty of both counts charged in the Second Superseding Indictment.

The sentencing was held on September 23, 2010. Per Rodriguez's request for new counsel, Kenneth Paul, Esq., had been appointed after the trial to replace Mr. McAllister. At sentencing, the Court added a two-level enhancement for obstruction of justice to Rodriguez's offense level, raising his offense level from 31 to 33. With Rodriguez's prior criminal history placing him in criminal history category III, the applicable Guidelines range was 168 to 210 months' imprisonment.

Taking into account the Guidelines range as well as the sentencing factors established by 18. U.S.C. § 3553, this Court sentenced Rodriguez to a term of 108 months' imprisonment, to be followed by three years' supervised release.

### III. Discussion

#### A. Legal Standard

Rodriguez's claims of ineffective assistance of counsel are analyzed under the two-pronged standard of Strickland v. Washington, 466 U.S. 668 (1984). Under Strickland, "[a] defendant claiming ineffective assistance must (1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms,' and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." United States v. Cohen, 427 F.3d 164, 167 (2d Cir. 2005) (citation omitted) (quoting Strickland, 466 U.S. at 688, 693). "[T]he burden rests on the accused to demonstrate a constitutional violation." United States v. Cronic, 466 U.S. 648, 658 (1984).

To satisfy Strickland's "performance" prong, "the record must demonstrate that 'counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" Wilson v. Mazzuca, 570 F.3d 490, 502 (2d Cir. 2009) (quoting Strickland, 466 U.S. at 687). The Supreme Court has instructed that "[j]udicial scrutiny of

counsel's performance must be highly deferential," Strickland, 466 U.S. at 689, and "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances," id. at 688.   Furthermore, to the extent an attorney's strategic decisions and trial tactics are reasonably informed under the circumstances, the petitioner cannot, with the benefit of hindsight, second-guess these decisions post-trial to present a colorable claim of ineffective assistance of counsel.   Id. at 690-91.

To establish prejudice, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."   Id. at 694.   A "reasonable probability" is a probability "sufficient to undermine confidence in the outcome." Id.; see also Lindstadt v. Keane, 239 F.3d 191, 204 (2d Cir. 2001).    Additionally, the Strickland Court instructed:

> [A] court need not determine whether counsel's
> performance was deficient before examining the
> prejudice suffered by the defendant as a result of the
> alleged deficiencies. . . . If it is easier to dispose
> of an ineffectiveness claim on the ground of lack of
> sufficient prejudice, . . . that course should be
> followed.

Strickland, 466 U.S. at 697.

In the context of a collateral attack pursuant to 28 U.S.C. § 2255 based on ineffective assistance of counsel, the language of the statute "requires the district court to hold a hearing

'[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" <u>Chang v. United States</u>, 250 F.3d 79, 85 (2d Cir. 2001) (alteration in original) (quoting 28 U.S.C. § 2255(b)). Nonetheless, "[t]he language of the statute does not strip the district courts of all discretion to exercise their common sense." <u>Id.</u> (quoting <u>Machibroda v. United States</u>, 368 U.S. 487, 495 (1962)) (internal quotation marks omitted); <u>see also</u> <u>Pham v. United States</u>, 317 F.3d 178, 184 (2d Cir. 2003) (permitting "a 'middle road' of deciding disputed facts on the basis of written submissions" and leaving it "within the district court's discretion to determine whether a hearing is warranted" (quoting <u>Chang</u>, 250 F.3d at 86)). Ultimately, the district court must "determine[] whether, viewing the evidentiary proffers, where credible, and record in the light most favorable to the petitioner, the petitioner, who has the burden, may be able to establish at a hearing a <u>prima facie</u> case for relief." <u>Puglisi v. United States</u>, 586 F.3d 209, 213 (2d Cir. 2009).

### B. Petitioner's Claims that Trial Counsel Was Ineffective

#### 1. Counsel's Failure to Move to Dismiss the Indictments

Rodriguez first claims that Mr. McAllister provided ineffective assistance because he failed to file a motion to dismiss the original and superseding indictments. Rodriguez

argues that "the indictments were lacking . . . evidence in support of the elements of the offense." Pet'r's Pro Se Mem. of Law in Supp. of Mot. to Vacate, Set Aside or Correct Sentence Under 28 USC 2255, at 12 [hereinafter Pet'r's Br.]; see also id. at 3; Pet'r's Mot. Under 28 USC § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody 5 [hereinafter Pet'r's Mot.]. These claims are without merit.

First, the Government did not proceed to trial on the original Indictment or the First Superseding Indictment. Thus, even if these indictments were defective and counsel failed to move to dismiss them, Rodriguez could not have suffered any resulting prejudice.

Second, the Second Superseding Indictment was facially valid and therefore "impervious to attack on a motion to dismiss." United States v. Eichman, 756 F. Supp. 143, 146 (S.D.N.Y. 1991). The Indictment specified the elements of the charged offenses, stated how and when Rodriguez committed the offenses, and detailed Rodriguez's fraudulent scheme. The two counts in the Indictment were therefore presented with sufficient detail to apprise Rodriguez of the charges against him. See United States v. Yannotti, 541 F.3d 112, 127 (2d Cir. 2008) (explaining that "an indictment need do little more than to track the language of the statute charged and state the time and place (in approximate terms) of the alleged crime" (quoting

United States v. Alfonso, 143 F.3d 772, 776 (2d Cir. 1998))
(internal quotation marks omitted)); Fed. R. Crim. P. 7(c)
(stating that an indictment need only contain "a plain, concise,
and definite written statement of the essential facts
constituting the offense charged").   Thus, any motion to dismiss
the Second Superseding Indictment would have been futile, and
defense counsel's failure to file such a motion does not
constitute deficient performance.   See United States v. Kirsh,
54 F.3d 1062, 1071 (2d Cir. 1995).[1]   In any event, defense
counsel challenged the adequacy of the evidence against
Rodriguez following the conclusion of the Government's case by
making a motion pursuant to Federal Rule of Criminal Procedure
29, which the Court denied on the record.   Trial Tr. 608.

## 2. Counsel's Failure to Take Certain Actions
## Regarding Exculpatory Evidence

        Rodriguez next claims that Mr. McAllister provided
ineffective assistance because he failed to take various actions
with regard to supposed exculpatory evidence, such as filing a
motion to compel production of such evidence.   Pet'r's Br. 3;
Pet'r's Mot. 5.   Rodriguez asserts that he provided his
housekeeper Griselda with materials that proved his innocence,

---

[1] Apart from his claim for ineffective assistance of counsel for failure to
file a motion to dismiss the Indictment, Rodriguez is procedurally barred
from challenging the actual sufficiency of the evidence for the Indictment
because such a claim should have been raised on direct appeal. See United
States v. Thorn, 659 F. 3d 227, 231 (2d. Cir. 2011).

but these materials were never produced because the government seized them and concealed them from the defense. Trial Tr. 658. Rodriguez allegedly learned of this evidence suppression, along with alleged intimidation of Griselda, through a third party, Wendy Torres, who in turn had learned of it from Griselda. Id. at 659. Rodriguez argues that Griselda could have confirmed the alleged evidence suppression and witness intimidation if Mr. McAllister had subpoenaed her, such that Mr. McAllister's failure to do so rendered his assistance ineffective. Pet'r's Br. 12. Furthermore, Rodriguez argues that the government took evidence, including exculpatory evidence, from his computer, yet his counsel did not seek to compel production of this evidence and therefore was ineffective. See id. at 3; Pet'r's Mot. 5.

These claims fail because Mr. McAllister lacked a basis to file a motion to compel. With regard to the exculpatory evidence allegedly kept with Rodriguez's housekeeper, the government denies withholding, or knowing of, any such exculpatory evidence. Gov't's Opp'n 21. Further, Mr. McAllister acknowledged that he had access to all documents taken from the housekeeper. Trial Tr. 692, 695, 700. At trial, we instructed the jury: "You heard testimony yesterday that the government supposedly withheld documents from the defense and intimidated a witness. There was no admissible evidence to support those accusations, and you should disregard them." Id.

at 701.  Given that Rodriguez has not stated with specificity what the allegedly exculpatory evidence consists of, and there is no indication that such evidence exists, there was no basis for defense counsel to file a motion to compel.  Thus, counsel's failure to file such a motion cannot constitute deficient performance.  Furthermore, Mr. McAllister's decision not to subpoena the housekeeper did not constitute deficient performance because this was a decision of trial strategy made after considering his "client's best interests."  Id. at 695.[2]

Rodriguez's claims fare no better with regard to exculpatory evidence allegedly contained in his computer.  The Government states that it "did not possess any evidence from the defendant's computer" and, indeed, that "no computer was seized from the defendant or anyone else in this case."  Gov't's Opp'n 22-23.  Rodriguez, although he would be familiar with exculpatory evidence from his computer if such evidence existed, has not described such evidence with any specificity.  In short, Mr. McAllister did not perform deficiently with regard to

---

[2] Rodriguez also objects to his counsel's failure to call additional witnesses who would allegedly have testified to the "prosecutor's misconduct for illegally seizing petitioner's exculpatory evidence." Pet'r's Br. 12.  In support of this argument, petitioner has submitted statements by Wendy Torres and Justo I. Fernandez, attached to his Motion for Leave to File Material Witnesses Sworn Statements as Exhibits for Record, filed on March 20, 2012.  However, the reasons presented above for why counsel did not perform deficiently by not calling Griselda apply equally to counsel's decision not to call these additional witnesses.  Moreover, to the extent that these witnesses would have simply provided hearsay testimony, which seems likely in light of their written statements, it was even more reasonable for counsel not to call them.

exculpatory evidence allegedly contained in Rodriguez's computer.

Rodriguez not only fails to show that his attorney performed deficiently, but also fails to demonstrate that he suffered prejudice. As discussed above, Rodriguez has not identified any documents that would have proven his innocence or otherwise altered the result at trial. Moreover, it appears that the evidence at issue, to the extent it existed, was made available to Mr. McAllister. See Trial Tr. 692, 695, 700. Therefore, Rodriguez has not shown that he suffered prejudice with regard to evidence allegedly in the possession of his housekeeper or on his computer.

### 3. Counsel's Failure to Seek Substitution of Counsel

Next, Rodriguez claims that Mr. McAllister provided ineffective assistance "for failing to file a motion to be relieved as counsel after petitioner advised[] that he had [a] conflict of interest and that counsel was not properly advocating for petitioner." Pet'r's Br. 4; see also Pet'r's Mot. 5. Rodriguez argues that Mr. McAllister "became [a] friend of the government" and "the trial lost its adversarial character." Pet'r's Reply 3.

This argument is unavailing. Rodriguez never identifies, or alleges facts that would suggest, a legal conflict on the basis of which Mr. McAllister would be required to move for

substitution of counsel.    Indeed, Rodriguez offers nothing beyond speculative and unsubstantiated assertions.    See United States v. Feyrer, 333 F.3d 110, 119 (2d Cir. 2003); United States v. Salvagno, 344 F. App'x 660, 661 (2d Cir. 2009).    In fact, Mr. McAllister provided highly competent counsel to Rodriguez.    Therefore, Rodriguez fails to show that Mr. McAllister performed deficiently or that he suffered prejudice as a result.

### 4. Counsel's Failure to Make Certain Discovery Materials Available to Petitioner

Rodriguez continues his ineffective assistance of counsel claims by arguing that Mr. McAllister did not make certain discovery materials available to him, with Mr. McAllister "always presenting the excuse that the government was making translations." Pet'r's Br. 3; see also Pet'r's Mot. 5.    This claim is without merit.    First, Rodriguez has not demonstrated that his counsel performed deficiently.    Defense counsel is not required to present a defendant, for his review, with all discovery material that defense counsel acquires.    See United States v. Im, No. 07 Cr. 737 (PKC), 2009 WL 2191231, at *10-*11 (S.D.N.Y. July 17, 2009).    Here, given the large amount of evidence at issue in this case, Mr. McAllister's conduct appears

entirely reasonable under the circumstances.[3]   Moreover, Rodriguez cannot demonstrate prejudice, as he has not specified which documents were kept from him or how these documents would have altered his defense, proven his innocence, or otherwise changed the outcome of the trial.   In short, Rodriguez does not show either deficient performance or prejudice.

### 5. Counsel's Failure to Negotiate a Plea Agreement or Communicate to Petitioner the Government's <u>Pimentel</u> Letter

Rodriguez next claims that Mr. McAllister provided ineffective assistance because he failed to negotiate a plea agreement with the government and "fail[ed] to tell [him] of an offer by the government for plea under a Pimentel letter." Pet'r's Reply 3; <u>see also</u> Pet'r's Mot. 5; Pet'r's Br. 3; Pet'r's Reply 5.   Again, these claims are without merit.   With regard to the plea agreement claim, it is firmly established that defense counsel is "not under any obligation to pursue plea discussions with the government," and "[e]ven when a defendant specifically requests counsel to pursue a plea agreement, counsel's failure to do so is not ineffective assistance."[4]   <u>United States v.</u>

---

[3] We would also note that, given that Spanish is Rodriguez's native language, it seems highly unlikely that defense counsel would have withheld key evidence from him because the evidence was being translated from Spanish into English.

[4] Although the Supreme Court recently held in <u>Missouri v. Frye</u>, 132 S. Ct. 1399 (2012), that "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused," <u>id.</u> at 1408, this holding does not alter the

Morel, Nos. 07 Cr. 4899 (DC), 09 Civ. 8922 (DC), 2010 WL 2900318, at *4 (S.D.N.Y. July 22, 2010) (citing United States v. Perez-Luna, Nos. 07 Civ. 5533 (DC), 94 Cr. 709 (DC), 2008 WL 5170179, at *4 (S.D.N.Y. Dec. 10, 2008)).  Counsel's decision of whether to pursue a plea agreement "is a strategic decision ordinarily not second-guessed by the court."  Id. (citing Perez-Luna, 2008 WL 5170179, at *4).  Here, therefore, even if Rodriguez is correct that Mr. McAllister did not pursue plea negotiations with the Government, counsel's conduct fell within the acceptable range of discretion afforded him under Strickland.

    Moreover, Rodriguez has not demonstrated that he suffered prejudice, as the record strongly suggests that he had no intention of pleading guilty.  During the reverse proffer session, Rodriguez had an opportunity to express an interest in pleading guilty, yet he never did so.  Gov't's Opp'n 27.  At trial, he testified that he paid back 90 percent of his victims, and even in the present habeas proceeding, he has argued that there are documents proving his innocence and that "[he] didn't commit[] fraud."  Aff. ¶ 3.  These persistent protestations of innocence are inconsistent with the notion that, prior to trial,

---

principle that defense counsel is not required to pursue plea negotiations with the government.

petitioner had taken responsibility for his crime and was prepared to plead guilty.

Contrary to Rodriguez's argument, it is not probative of a desire to plead guilty that Rodriguez stated at sentencing that "[i]f [he] had the opportunity again . . . [he] would have never gone to trial." Pet'r's Reply 5 (quoting Sent'g Tr. 19). The fact that Rodriguez regretted his decision to go to trial after being found guilty by a jury does not suggest that he was prepared to plead guilty prior to trial. To the contrary, Rodriguez's words and conduct before, during, and after trial demonstrate that he previously refused, and still refuses, to admit guilt.

Rodriguez's claim that he received ineffective assistance because his counsel did not inform him of the Government's Pimentel letter also fails. For one, although "defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused," Missouri v. Frye, 132 S. Ct. 1399, 1408 (2012), that is immaterial here because the Government's Pimentel letter was not a plea offer. See Pimentel Letter 1 ("This analysis is set forth for informational purposes only, and forms no part of any plea agreement between this Office and Bryant Rodriguez (the 'defendant')."). Moreover, even if Mr. McAllister had performed deficiently by not showing Rodriguez the Pimentel letter,

Rodriguez could not demonstrate prejudice because, as discussed above, the record strongly suggests that he had no intention of pleading guilty.   Further, we reject Rodriguez's argument that he would have received a sentence 16 months lower than his current sentence had he pleaded guilty based on the sentencing range provided in the Pimentel letter.   Pet'r's Reply 4.   The Pimentel letter stated that Rodriguez's Guidelines range was 92 to 115 months' imprisonment, and the sentence Rodriguez ultimately received was 108 months -- a term of custody within that range.   See Pimentel Letter 3.   In short, Rodriguez can demonstrate neither deficient performance nor prejudice with regard to his counsel's alleged failure to negotiate a plea agreement or show him the Government's Pimentel letter.

### 6. Counsel's Allegedly Deficient Trial Decisions

Next, Rodriguez asserts a litany of claims based on decisions Mr. McAllister made during trial.   However, as discussed below, Rodriguez cannot succeed on any of these claims because the challenged decisions were within counsel's wide discretion under Strickland and, moreover, Rodriguez cannot demonstrate prejudice.

First, Rodriguez argues that counsel did not present unspecified "[v]ideos, written documents and audio tapes" at trial.   Pet'r's Aff. ¶ 4.   To start, Rodriguez does not demonstrate that Mr. McAllister's decision not to present these

unspecified materials exceeded his discretion to make strategic trial decisions.   Moreover, even assuming that Rodriguez is referring to specific, real evidence, that Mr. McAllister should have presented this evidence at trial, and that Mr. McAllister's decision not to preset the evidence constituted deficient performance, Rodriguez still cannot show prejudice.   Rodriguez has not come close to discharging his burden of specifying what these materials contained or how they would have changed the outcome at trial.   In short, Rodriguez has established neither deficient performance nor prejudice.

Second, Rodriguez argues that counsel should have objected to a tape recording of an investors' meeting that was verified not by the maker of the tape, but rather by a person attending the recorded meeting.   Id. ¶ 5.   However, counsel's decision not to object to the recording was not deficient performance, both because the Federal Rules of Evidence do not require recordings to be authenticated by their creator, see Fed. R. Evid. 901, and because such a decision was within counsel's wide discretion regarding trial strategy.   Further, Rodriguez could not have suffered prejudice from his counsel's failure to raise a frivolous objection based on a nonexistent legal principle.

Third, Rodriguez challenges Mr. McAllister's decision to reveal during direct examination his prior criminal conviction for falsely pretending to be an Immigration and Naturalization

Service official. Pet'r's Aff. ¶ 6.  This claim is without merit.  The prior conviction was for impersonating a federal officer -- a crime involving dishonesty -- and thus was admissible against Rodriguez.  See Fed. R. Evid. 609(a)(2).  Mr. McAllister, surely aware that the Government would seek to use this conviction to impeach Rodriguez, made a strategic decision to defuse the impact of the conviction by eliciting the information on direct examination.  This decision is consistent with widely accepted trial strategy, and is well within Mr. McAllister's discretion under Strickland.  Moreover, because the prior conviction would undoubtedly have been elicited on cross-examination even if not on direct, Rodriguez did not suffer prejudice.[5]

Fourth, Rodriguez argues that Mr. McAllister was ineffective for stipulating that e-mails he sent through his Hotmail e-mail account constituted interstate wire communications.  Pet'r's Aff. ¶ 7.  According to Rodriguez, it was not his fault that Hotmail routed its email across state lines, and he "cannot be responsible for what an Email company

---

[5] Rodriguez also challenges the fact that "[c]ounsel didn't object to the court's failure to make a balance under Rule of [E]vidence 403 [regarding] the fact that a prior conviction for a similar act was discussed at trial in[] front of the jury."  Pet'r's Aff. ¶ 6.  However, because Rodriguez's prior conviction was admissible under Rule 609(a)(2) as a crime of dishonesty, the conviction was required to be admitted without any balancing under Rule 403.  See Green v. Bock Laundry Mach. Co., 490 U.S. 504, 525-526 (1989); United States v. Estrada, 430 F.3d 606, 615 (2d Cir. 2005).

d[id]."   Pet'r's Reply 3.   Contrary to Rodriguez's argument, however, Mr. McAllister's stipulation that the emails constituted interstate wire communications was not deficient performance, but rather was part of a reasonable trial strategy. The proposition stipulated to could have been easily established by the testimony of the operator of Hotmail, Microsoft, and it was reasonable for counsel to focus instead on Rodriguez's lack of intent to defraud.   Further, in light of the ease with which the Government could have established the proposition at trial if necessary, counsel's decision to stipulate could not have prejudiced Rodriguez.

Lastly, Rodriguez argues that Mr. McAllister provided ineffective assistance by failing to subpoena a New York Police Department ("NYPD") representative to testify that Rodriguez had filed a complaint against Pastor Amadis.   Pet'r's Aff. ¶ 8. However, Mr. McAllister's decision not to subpoena a peripheral witness to support a defense theory, while seeking to establish that theory through other evidence, was clearly within his discretion under Strickland.   Moreover, Rodriguez cannot prove prejudice because, despite the fact that the NYPD representative was not called, defense counsel was able clearly, albeit unsuccessfully, to present the defense that Pastor Amadis was really the culpable one.   See Gov't's Opp'n 4-5.   Additionally, of course, testimony by an NYPD representative regarding a

complaint that Rodriguez filed would not have changed the fact that the Government presented overwhelming evidence of Rodriguez's guilt at trial.

In short, none of Rodriguez's claims of ineffective assistance of counsel at trial are meritorious, and they are accordingly denied.

### C. Petitioner's Claims that Sentencing Counsel Was Ineffective

#### 1. Counsel's Failure to Object to the Obstruction of Justice Enhancement

Rodriguez argues that Mr. Paul, who was appointed at Rodriguez's request following trial and who represented him at sentencing, was ineffective for failing to object to the two-level offense enhancement for obstruction of justice. Pet'r's Mot. 6. Rodriguez asserts that he did not receive "[n]otice of upward departure from the guidelines range as required by Rule 32 of Criminal Procedure[]." Id. As discussed below, however, Rodriguez fails to establish either deficient performance or prejudice.

First, Rodriguez fails to demonstrate that Mr. Paul performed deficiently. Section 3C1.1 of the U.S. Sentencing Guidelines provides:

> If (1) the defendant willfully obstructed or impeded,
> or attempted to obstruct or impede, the administration
> of justice with respect to the investigation,
> prosecution, or sentencing of the instant offense of
> conviction, and (2) the obstructive conduct related to

> (A) the defendant's offense of conviction and any
> relevant conduct; or (B) a closely related offense,
> increase the offense level by 2 levels.

U.S. Sentencing Guidelines Manual § 3C1.1. Interpreting this provision, the Supreme Court has held that the two-level enhancement applies when a defendant "gives false testimony concerning a material matter with the willful intent to provide false testimony." United States v. Dunnigan, 507 U.S. 87, 94 (1993); see also United States v. Agudelo, 414 F.3d 345, 349 (2d Cir. 2005).

Here, there was ample evidence for the Court to determine that Rodriguez deliberately offered brazenly false testimony on material matters. See Gov't's Sent'g Mem. 6-9. As the Court explained at sentencing, Rodriguez's testimony that he had paid back 90 percent of his victims was "simply not supported by any evidence"; in fact, "the evidence [was] dramatically to the contrary, and the explanation that he offered about why he couldn't prove what he said was one that was wholly unsupported and indeed offensive." Sent'g Tr. 28. Indeed, Rodriguez's explanation "[was] filled with unproven slander and [was] totally unsupported by any motion to suppress or the calling of any witness." Id. at 29. Of course, Rodriguez's testimony that he had paid back 90 percent of his victims was material to his offense of conviction. See id. In light of these facts, any

objection by counsel to the enhancement for obstruction of justice would have been futile.

As to Rule 32 of the Federal Rules of Criminal Procedure, Rodriguez simply misunderstands the Rule's notice requirement for an upward departure from the Guidelines.  Under Rule 32, a court is required to provide "reasonable notice" only for a "depart[ure] from the applicable sentencing range on a ground not identified for departure either in the presentence report or in a party's prehearing submission."  Fed. R. Crim. P. 32(h).  However, the enhancement for obstruction of justice is not classified as a "departure" under the Guidelines.  At any rate, here, the Government's Sentencing Memorandum explicitly argued for the obstruction of justice enhancement.  See Gov't's Sent'g Mem. 6-9.  Therefore, the Court was not required to provide any additional notice to Rodriguez prior to applying the enhancement for obstruction of justice at sentencing.

Aside from the fact that Mr. Paul did not perform deficiently by not objecting to the obstruction of justice enhancement, Rodriguez cannot show that he suffered prejudice.  First, as discussed above, if Mr. Paul had objected to the enhancement, his objection would have been denied as meritless.  Second, Rodriguez's sentence of 108 months' imprisonment was not only 60 months less than the bottom of his Guidelines range of 168 to 210 months, see Sent'g Tr. 29, but also 27 months less

than the bottom of what his Guidelines range would have been without the two-level enhancement, 135 to 168 months.  <u>See</u> PSR ¶ 52 (reflecting that Rodriguez had a criminal history category of III, based on a total of five criminal history points). Moreover, the sentence of 108 months' imprisonment was not mechanically calculated as a fixed amount below the bottom of the applicable Guidelines range, but rather was determined, independently of that range and in light of the totality of the circumstances, to be sufficient, but not greater than necessary, to satisfy the purposes of sentencing set forth in 18 U.S.C. § 3553(a).    Therefore, both because an objection to the obstruction of justice enhancement would have been denied and because this enhancement did not affect the sentence imposed, Rodriguez could not have suffered prejudice.

### 2. Counsel's Failure to Move for Acquittal Pursuant to Rule 29

Rodriguez further claims that Mr. Paul, as well as Mr. McAllister, rendered ineffective assistance by failing to move for Rodriguez's acquittal pursuant to Federal Rule of Criminal Procedure 29.  Pet'r's Aff. ¶¶ 9, 10.  Contrary to Rodriguez's argument, however, Mr. McAllister made a Rule 29 motion orally at trial, which the Court denied on the record.  <u>See</u> Trial Tr. 608.  In light of this denial, Mr. Paul was not required to resubmit the same motion in writing.  <u>See</u> <u>Miranda v. United</u>

States, No. 98 CV 1490 (ILG), 2008 WL 2561990, at *9 (E.D.N.Y. June 25, 2008).   In this habeas proceeding, moreover, Rodriguez has failed to present any grounds for acquittal, a failure which stands in stark contrast to the overwhelming evidence of his guilt presented at trial.   Therefore, with regard to Mr. McAllister, Rodriguez is incorrect that he did not make a Rule 29 motion; with regard to Mr. Paul, such a motion would have been futile and thus Rodriguez did not receive ineffective assistance or suffer prejudice.

### 3. Counsel's Failure to Consult with Petitioner Regarding Appeal

Rodriguez next claims that Mr. Paul rendered ineffective assistance because he "fail[ed] to discuss with petitioner the fact that all [these] issues [raised in Rodriguez's habeas application] could have been presented on appeal" and "[i]f counsel would have properly advised petitioner all [these] issues except ineffective assistance of counsel would have been raised."   Pet'r's Aff. ¶ 10.   Under Supreme Court precedent, courts apply a two-prong test to claims of ineffective assistance of counsel regarding an attorney's alleged failure to consult with his client concerning his ability to appeal. First, the court asks whether the attorney actually "consulted" with his client regarding his ability to appeal.   Roe v. Flores-Ortega, 528 U.S. 470, 478 (2000).   The term "consult" means

"advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." Id. If counsel consulted with the defendant, "the question of deficient performance is easily answered: Counsel performs in a professionally unreasonable manner only by failing to follow the defendant's express instructions with respect to an appeal." Id.

If counsel did not "consult" with the defendant concerning an appeal, the court must determine whether counsel had a constitutional obligation to do so. An attorney has

> a constitutionally imposed duty to consult with the defendant about an appeal when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing.

Id. at 480. Furthermore, to show prejudice, "a defendant must demonstrate that there is a reasonable probability that, but for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." Id. at 484.

Here, Rodriguez's claim lacks merit. Although the present record lacks a detailed account of Mr. Paul's "consultation" with Rodriguez regarding the possibility of an appeal, Rodriguez admits that Mr. Paul informed him that "there was nothing to appeal according [to] his careful[] review of the case." Pet'r's Br. 15; see also Pet'r's Aff. ¶ 10 ("[Mr. Paul] only

said that there [were] no issues for appeal."). It is apparent, therefore, that Mr. Paul and Rodriguez discussed the merits of an appeal, and our inquiry could end there. But even if we found that Mr. Paul did not "consult" with Rodriguez, we would find that Mr. Paul did not have a constitutional obligation to do so. For one, Rodriguez has not presented any nonfrivolous grounds for appeal. Further, although the Court advised Rodriguez at sentencing of his right to appeal, Sent'g Tr. 32, Rodriguez does not argue that he communicated to Mr. Paul his desire to exercise this right. In short, both because, on the first prong of Flores-Ortega, Mr. Paul in fact consulted with Rodriguez regarding his right to appeal and because, on the second prong, Mr. Paul did not have a constitutional obligation to consult with Rodriguez, we find that Rodriguez's claim of ineffective assistance of counsel lacks merit.

We have considered petitioner's remaining arguments and find them to be without merit.

## IV. Conclusion

For the reasons stated above, Rodriguez's habeas corpus application is denied. Additionally, petitioner's Motion for Leave to File Material Witnesses Sworn Statements as Exhibits for Record, filed on March 20, 2012, is granted. Finally, petitioner's Motion to Compel, filed on May 16, 2013, and requesting that this Court compel Magistrate Judge Peck to rule

on the habeas application, is denied as moot.  This Memorandum and Order resolves docket entry nos. 1 and 4 (11 CV 6707) and no. 43 (09 CR 58).

**SO ORDERED.**

Dated:     New York, New York
           July 3, 2013

                                        NAOMI REICE BUCHWALD
                                        UNITED STATES DISTRICT JUDGE

Copies of the foregoing Memorandum and Order have been mailed on this date to the following:


Petitioner:

Bryant Ismail Rodriguez
No. 56635-054
F.P.C. Canaan, P.O. Box 200
Waymart, PA 18472

Former Attorneys for Petitioner:

Kenneth Alan Paul, Esq.
111 Broadway
Suite 701
New York, NY 10006

Paul Joseph McAllister, Esq.
401 Broadway, Suite 310
New York, NY 10013

Attorney for Respondent:

Sarah Y. Lai, Esq.
U.S. Attorney's Office, SDNY
1 St. Andrew's Plaza
New York, NY 10007